**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 14-11277-JAD |
| | ) | |
| TRUSTEES OF CONNEAUT | ) | Chapter 11 |
| LAKE PARK, INC., | ) | |
| | ) | |
| Reorganized Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | X | |
| | ) | |
| PARK RESTORATION, LLC, | ) | Adversary No. 18-1024-JAD |
| | ) | |
| Plaintiff, | ) | Related to Dkt. #12 |
| | ) | |
| - v - | ) | |
| | ) | |
| TRUSTEES OF CONNEAUT | ) | |
| LAKE PARK, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | X | |

**MEMORANDUM OPINION[1]**

This adversary proceeding is the latest installment of an ongoing feud between Park Restoration, LLC ("Park Restoration") and the Trustees of Conneaut Lake Park, Inc. ("TCLP").

Because the claims or causes of action asserted by Park Restoration herein fail as a matter of law, an order shall be entered that dismisses Park Restoration's *Second Amended Complaint*, ECF No. 5 (the "Amended Complaint"), with prejudice.

---

[1] This adversary proceeding is a core proceeding over which this Court has the requisite subject-matter jurisdiction to enter a final order. See 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), 157(b)(2)(K), 157(b)(2)(O), and 1334(b).

# I.

In this adversary proceeding Park Restoration is seeking to assert (by way of subrogation) a $478,260.75 secured tax claim (the "Secured Tax Claims") against TCLP.  Park Restoration is asserting its claim pursuant to 11 U.S.C. § 509 because such claims of the taxing authorities (the "Taxing Authorities")[2] were previously paid during the pendency of this case from proceeds of a fire insurance policy obtained by Park Restoration.

The undisputed facts are that the Secured Tax Claims date back to 1996, which is well before Park Restoration's relationship with TCLP.

In 2008, Park Restoration and TCLP entered into a management agreement.  Pursuant to this management agreement, TCLP turned over to Park Restoration a certain building and real estate located at or near the shore of Conneaut Lake, which was known as the "Beach Club."

In connection with its control and use of the Beach Club, Park Restoration obtained a policy of insurance from Erie Insurance Exchange ("Erie Insurance"), which included "Property Protection" covering "Buildings" in case of fire damage in the amount of $611,000.

On August 1, 2013, the Beach Club was destroyed by fire, the cause of which is undetermined.

As a result of the fire, Park Restoration, TCLP, and the Taxing Authorities asserted competing claims to payment from the insurance proceeds.

---

[2] The Taxing Authorities consist of: Summit Township, Crawford County, the Tax Claim Bureau of Crawford County, and the Conneaut School District.

As it relates to the Secured Tax Claims, the Taxing Authorities sought payment from Erie Insurance pursuant to 40 P.S. § 638 (the "State Statute").

The State Statute provides that an insurance company presented with "a claim of a named insured for fire damage to a structure located within a municipality" may not pay such a claim in excess of $7,500 without first receiving a "certificate" explaining whether "delinquent taxes, assessments, penalties, or user charges against the [insured] property" are owed to the municipality. See 40 § 638(a), (b)(1)(i)-(ii).

The State Statute further provides that after receiving a "certificate and bill" indicating that the covered property remains subject to a municipal tax liability, the insurance company must "return the bill to the [municipal] treasurer and transfer to the treasurer an amount from the insurance proceeds necessary to pay the taxes, assessments, penalties, charges and costs shown on the bill." Id. at § 638(b)(2)(ii).

In September of 2013, and not wanting any of the insurance proceeds to be paid to anyone but itself, Park Restoration commenced a declaratory judgment action (the Declaratory Judgment Action") in state court asserting a claim to all of the insurance proceeds.  In connection with the Declaratory Judgment Action, Erie Insurance interpleaded the $611,000 of insurance proceeds with the state court.

Shortly after TCLP filed its bankruptcy case with this Court, the Declaratory Judgment Action was removed to this Court on February 3, 2015.

Thereafter, the funds subject to the interpleader were also removed to the registry maintained by the Clerk of the United States Bankruptcy Court.

On December 22, 2015, this Court rendered its decision in the Declaratory Judgment Action thereby awarding the Taxing Authorities $478,260.75 of the insurance proceeds, and awarding the remaining sums above and beyond this amount to Park Restoration. Park Restoration, LLC v. Summit Twp. (In re Trustees of Conneaut Lake Park, Inc.), 543 B.R. 193, 202-03 (Bankr. W.D.Pa. 2015) (the "Declaratory Judgment Opinion").

In connection with rendering this decision, the Court overruled the various claims of Park Restoration, including Park Restoration's contention that the application of the State Statute to the insurance proceeds at issue constituted an unlawful taking under both the Pennsylvania Constitution and the United States Constitution. In re Trustees of Conneaut Lake Park, Inc., 543 B.R. at 203-07. This Court's decision and order was ultimately affirmed by the United States Court of Appeals for the Third Circuit. See Park Restoration, LLC v. Erie Ins. Exch. (In re Trustees of Conneaut Lake Park, Inc.), 855 F.3d 519 (3d Cir. 2017).

Thereafter, the Secured Tax Claims were paid from the insurance proceeds.[3] Also, within the underlying bankruptcy case, TCLP had its plan of reorganization confirmed by order of this Court.

---

[3] The allowed secured tax claims of the Taxing Authorities actually exceeded $478,260.75 by several hundred thousand dollars. The manner in which these sums were paid was that $478,260.75 was paid from insurance proceeds, and the confirmed plan provided that the remainder of the claims were to be paid from the sale of parcels of property owned by TCLP. See *Joint Amended Plan of Reorganization Dated July 28, 2018* at Article V, Section 5.01.

While TCLP was confirming its plan of reorganization, Park Restoration chose to not participate in the underlying bankruptcy case, and it chose to not file a proof of claim against TCLP on account of any claims it may have against the debtor.  Instead, well after plan confirmation and well after the bar date for filing claims, Park Restoration filed a lawsuit against TCLP sounding in unjust enrichment (for, after all, Park Restoration paid the insurance premiums giving rise to the insurance proceeds paid to the Taxing Authorities).  The unjust enrichment action, however, violated the discharge injunction contained within TCLP's confirmed plan and confirmation order.  As a result, Park Restoration was enjoined from further prosecution of the unjust enrichment action.  See Trustees of Conneaut Lake Park, Inc. v. Park Restoration, LLC (In re Trustees of Conneaut Lake Park, Inc.), No. 14-11277-JAD, 2018 WL 2246582 (Bankr. W.D.Pa. May 15, 2018).

Undaunted, Park Restoration commenced the instant adversary proceeding contending that because $478,260.75 of the insurance proceeds was paid to the Taxing Authorities on account of the Secured Tax Claims, Park Restoration may now step in the proverbial shoes of the Taxing Authorities and seek payment from TCLP by operation of 11 U.S.C. § 509.

In response to the subrogation claim, TCLP has filed a *Motion to Dismiss Amended Complaint*, ECF No. 12 ("Motion to Dismiss").  In its Motion to Dismiss, TCLP contends that the cause of action averred by Park Restoration does not meet the technical requirements of 11 U.S.C. § 509 and as such, Park

Restoration's Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.[4]

Upon review of both Park Restoration's Amended Complaint and applicable law, as well as the briefs filed by the parties relative hereto, this Court agrees that Park Restoration fails to state a claim under 11 U.S.C. § 509.

## II.

Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b), provides that complaints may be dismissed for "failure to state a claim on which relief can be granted."

In deciding such a motion, the Court "may consider material which is properly submitted as part of the complaint ... without converting the motion to dismiss into a motion for summary judgment." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

The Court may also consider: documents the complaint incorporates by reference or are otherwise integral to the claim (see Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1178 (10th Cir. 2012), Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012), Building Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012)), information subject to judicial notice (see Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012), Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n. 9 (9th Cir. 2012), Gee v. Pacheco, 627 F.3d 1178, 1186

---

[4] TCLP also avers that dismissal of the Amended Complaint is appropriate because: (i) Park Restoration's subrogation claim was discharged by TCLP's confirmed chapter 11 plan, and (ii) litigation of the subrogation claim is barred by the doctrines of *res judicata* and collateral estoppel. See Motion to Dismiss at ¶9.

(10th Cir. 2010)), and matters of public record such as orders and other materials in the record of the case (see <u>Miller v. Redwood Toxicology Lab., Inc.</u>, 688 F.3d 928, 931 n. 3 (8th Cir. 2012)).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955).

Determining whether a claim for relief is plausible is a "context-specific task" requiring the court to "draw on its judicial experience and common sense." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679, 129 S.Ct. 1937 (citing <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157–58 (2d Cir. 2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation to the elements of a cause of action will not do.' " <u>Id.</u> at 678, 129 S.Ct. 1937.

Additionally, the court need not accept as true bald assertions (or bald conclusions or inferences), legal conclusions couched or masquerading as facts, or conclusions contradicted by the complaint's own exhibits or other documents of which the court may take proper notice. See <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 588 (9th Cir. 2008); <u>Bishop v. Lucent Tech., Inc.</u>, 520

F.3d 516, 519 (6th Cir. 2008); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)

(the court is not obligated to "swallow the plaintiff's invective hook, line, and

sinker; bald assertions, unsupportable conclusions, periphrastic

circumlocutions, and the like need not be credited").

With these standards in mind, the Court will examine whether Park

Restoration has stated a plausible claim for subrogation under 11 U.S.C. §

509.

## <u>Subrogation Under 11 U.S.C. § 509</u>

As a general matter:

> [S]ubrogation is the substitution of one party in place of another
> with reference to a lawful claim, demand or right. It is a derivative
> right, acquired by satisfaction of the loss or claim that a third
> party has against another. Subrogation places the party paying the
> loss or claim (the "subrogee") in the shoes of the person who
> suffered the loss ("the subrogor"). Thus, when the doctrine of
> subrogation applies, the subrogee succeeds to the legal rights and
> claims of the subrogor with respect to the loss or claim. See, e.g.,
> Amer. Surety Co. of New York v. Bethlehem Nat. Bank, 314 U.S.
> 314, 317, 62 S.Ct. 226, 86 L.Ed. 241 (1941) (discussing equitable
> doctrine of subrogation in surety context); Han v. United States,
> 944 F.2d 526, 529 (9th Cir.1991) (discussing equitable subrogation
> generally).

Hamada v. Far E. Nat'l Bank (In re Hamada), 291 F.3d 645, 649 (9th Cir.

2002).

Subrogation is commonly categorized as being one of three types: (i)

"conventional" or "contractual," (ii) "legal" or "equitable," or (iii) statutory. In re

Hamada, 291 F.3d at 649.  The first type, "conventional" or "contractual" is

what its name suggests—subrogation rights arising from an express or implied

agreement between the subrogee and subrogor.  Id.  Equitable subrogation, on

the other hand, "is a legal fiction, which permits a party who satisfies another's obligation to recover from the party 'primarily liable' for the extinguished obligation." Id. (quoting In re Air Crash Disaster, 86 F.3d 498, 549 (6th Cir. 1996)). Finally, a party's right to statutory subrogation emanates from an applicable statute. See In re Hamada, 291 F.3d at 649.

Park Restoration acknowledges that by the Amended Complaint it is not seeking relief based on theories of contractual subrogation or equitable subrogation. Rather, the basis of the relief it seeks is grounded in statute—11 U.S.C. § 509.

Section 509 of the Bankruptcy Code provides, in pertinent part, that: "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." See 11 U.S.C. § 509(a). What is plain and clear from this statute is that in order to succeed on a subrogation claim, Park Restoration must show that (i) it is liable with the debtor on, or has secured, a claim[5] of a creditor against TCLP, and (ii) it paid the claim.[6]

---

[5] Section 101(5) of the Bankruptcy Code defines a "claim" as: "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." See 11 U.S.C. § 101(5).

[6] 11 U.S.C. §§ 509(b) and 509(c) contain some exceptions to the application of the statutory subrogation set forth in 11 U.S.C. §509(a). The exceptions contained in these parts of the statute have not been invoked by TCLP as a defense to the Amended Complaint and, as such, they are irrelevant to this matter.

The Court will first examine whether Park Restoration is a "payor" of the Secured Tax Claims at issue and then whether it is a "co-obligor" with respect to the same under the unique facts and circumstances of this case.

### Whether Park Restoration is a Payor under § 509

The requirement for subrogation under Section 509 that an averred subrogee has actually paid the debtor's debt is not to be understated.

In addition to being set forth in the plain text of § 509(a), it has been observed that "[t]he legislative history to § 509 indicates that it was designed to describe rights available to a limited class of creditors, namely, true co-debtors *who have actually paid a debtor's obligation* to the third party in question." In re Hamada, 291 F.3d at 650 (emphasis added).  As the court in Hamada observed:

> This section is based on the notion that the only rights available to a surety, guarantor, or comaker are contribution, reimbursement, and subrogation. The right that applies in a particular situation will depend on the agreement between the debtor and the codebtor, and on whether and how the payment was made by the codebtor to the creditor.

In re Hamada, 291 F.3d at 650 (quoting H.R.Rep. No. 95–595, 95th Congr., 1st Sess. (1977) p. 358, U.S. Code Cong. & Admin. News at 5963, 6314).

Courts have held that "payment" need not necessarily be in the form of cash or cash-equivalent, but need only discharge the obligation against the debtor. See Feldhahn v. Feldhahn, 929 F.2d 1351, 1354 (8th Cir. 1991) (finding that an ex-spouse's assignment of a collateralized interest in real

10

property to a lienholder in satisfaction of a debt was sufficient to merit subrogation to that lienholder's claim).

Nonetheless, "payment" must be made with the property of the averred subrogee. See Greenfield, Stein & Senior, LLP v. Daley (In re Daley), 222 B.R. 44, 47 (Bankr. S.D.N.Y. 1998). That is payment from someone else's property is insufficient to state a claim.

In this case, Park Restoration has not contended that Park Restoration has paid TCLP's debt to the Taxing Authorities (i.e. the Secured Tax Claims) directly. Rather, Park Restoration has contended that Park Restoration did so indirectly by virtue of Erie Insurance's tender of the insurance proceeds to the Taxing Authorities. Specifically, Park Restoration asserts that Park Restoration had a vested interest in the insurance proceeds and thus, the Secured Tax Claims were satisfied with Park Restoration's property. See e.g., *Plaintiff's Second Brief in Response to Debtor's Motion to Dismiss,* ECF No. 18 ("Park Restoration's Second Brief").

The crux of Park Restoration's argument is that under Pennsylvania law, an insured's right to insurance proceeds vests immediately upon the occurrence of the loss which, in-turn, triggers the insurer's liability under the relevant policy. See Park Restoration's Second Brief at p. 2. Moreover, Park Restoration asserts that Pennsylvania courts have been reluctant to enforce restrictions on an insured's right to payment after a right to payment has occurred. Thus, it is Park Restoration's position that Park Restoration had a "vested interest in the entirety of the insurance proceeds at the moment the

Beach Club was destroyed. . . .” <u>See</u> Park Restoration's Second Brief at p. 4.

Further, Park Restoration contends that the Court had previously recognized

this interest in the Court's prior *Memorandum Opinion* entered at adversary

proceeding no. 15-1010, ECF No. 82 (i.e. the Declaratory Judgment Opinion).

<u>See</u> Park Restoration's Second Brief at p. 4 & n. 2.

TCLP disagrees that Park Restoration is entitled to subrogation and filed

its Motion to Dismiss averring that not only did Park Restoration not have a

legally cognizable property interest in the insurance proceeds, but that such

determination had been made in prior proceedings as well.

Specifically, TCLP refers to the holdings of the Third Circuit Court of

Appeals in <u>Park Restoration, LLC v. Erie Ins. Exch. (In re Trustees of Conneaut</u>

<u>Lake Park, Inc.)</u>, 855 F.3d 519 (3d Cir. 2017). That opinion overruled the

District Court's reversal of certain of this Court's findings in the Declaratory

Judgment Opinion and affirmed this Court's findings and conclusions.

By way of background, the matter previously before the Court relative to

the Declaratory Judgment Opinion concerned whether Park Restoration had a

legally cognizable property interest in the insurance proceeds in the context of

an averred unconstitutional taking.  <u>See</u> <u>In re Trustees of Conneaut Lake Park,</u>

<u>Inc.</u>, 543 B.R. 193 (Bankr. W.D.Pa. 2015).

In that proceeding, Park Restoration challenged the constitutionality of

Erie Insurance's disbursement of $478,260.75 of the insurance proceeds to the

Taxing Authorities as required by the State Statute. Park Restoration

contended that this provision violated the Takings Clause of the United States Constitution and the Pennsylvania Constitution.

Essential to a determination of whether an improper "taking" occurred, this Court observed that it was first necessary to determine that the averred taking affected a "constitutionally protected property interest"—i.e. a legally cognizable property interest. See In re Trustees of Conneaut Lake Park, Inc., 543 B.R. at 204.

In addressing this question, this Court recognized that the relevant insurance policy included language indicating that the policy conformed to the laws of the state in which Park Restoration's home office was located—in this case, Pennsylvania. Further, that applicable law provided that "pre-existing statutory provisions pertaining to the subject matter of a contract are deemed to be incorporated within the terms agreed to by the contracting parties." In re Trustees of Conneaut Lake Park, Inc., 543 B.R. at 205.

Accordingly, since the State Statute predated Park Restoration's policy with Erie Insurance, this Court concluded it was interwoven into the policy. Moreover, this Court's conclusions were further supported by the fact that the face of the policy itself read "We [i.e., Erie Insurance Exchange] will adjust all losses' with you [i.e., the Plaintiff]. We will pay you unless some other person . . . is legally entitled to receive payments." See In re Trustees of Conneaut Lake Park, Inc., 543 B.R. at 205.

Given these considerations, as well as the fact that the property taxes were delinquent as early as 1996[7]—with the Beach Club Management Agreement being executed in 2008—this Court found that Park Restoration's rights to the insurance proceeds were "always subject to the Taxing Authorities." Id. at 206. Stated another way, that Park Restoration ". . . never acquired a vested right to the $478,260.75 owed to the taxing authorities at the time of the fire." Id.

Although the District Court reversed the holding of this Court, on appeal the Third Circuit Court of Appeals agreed with this Court's analysis regarding Park Restoration's possession of a "legally cognizable property interest" in the portion of the insurance proceeds remitted to the Taxing Authorities and reversed the District Court. See In re Trustees of Conneaut Lake Park, Inc., 855 F.3d at 526. The Third Circuit therein also found that the State Statute made Park Restoration's receipt of the insurance proceeds conditional on satisfaction of the real property taxes. Id. Thus, the Third Circuit found that Park Restoration had no legally cognizable property interest in the insurance proceeds subject to the Taxing Authorities' claims. Id.

In defense of what can be described as TCLP's law of the case arguments, Park Restoration asserts that reliance on the Third Circuit's statement finding that Park Restoration had no "legally cognizable property interest" in the insurance proceeds is erroneous.  Specifically, Park Restoration argues that the

---

[7] The Declaratory Judgment Opinion indicates that the tax obligations dated back to at least 1999, but the Third Circuit's opinion and subsequent filings by the parties indicate that the delinquent taxes dated as far back as 1996. See e.g., Amended Complaint at ¶14.

Third Circuit's statement "was made in the context of responding to [Park Restoration's] argument that applying § 638 would violate the Takings Clause of the United States Constitution, and the Third Circuit did not include citation to any authority suggesting that insureds do not have any 'legally cognizable interest' in the contracted-for insurance policies." Park Restoration's Second Brief at pp. 4-5. Park Restoration therefore asserts that reading the Third Circuit's opinion to find no legally cognizable interest undercuts Pennsylvania state law which provides that an insured's right to insurance proceeds vests at the time of the loss. See Park Restoration's Second Brief at p. 5.

Park Restoration therefore urges this Court to read the Third Circuit's statement of no cognizable legal interest in conjunction with its statement that "[i]n sum, when Park Restoration insured the Beach Club, its rights to any insurance proceeds were subject to the claim of the Tax Authorities." Park Restoration further asserts that this statement is a "clear recognition" that Park Restoration had a legal right to the remitted insurance proceeds, which was subordinated to the claim of the Taxing Authorities. See Park Restoration's Second Brief at p. 5.

To the extent that Park Restoration asserts that this Court's and the Third Circuit's findings that Park Restoration had no "legally cognizable property interest" in the insurance proceeds remitted to the Taxing Authorities do not equate to a finding that Park Restoration had no rights whatsoever to those funds, this Court agrees with Park Restoration.  In fact, this Court found in its Declaratory Judgment Opinion that, but for the application of the State

Statute, Park Restoration would have had an interest in the entirety of the insurance proceeds. See In re Trustees of Conneaut Lake Park, Inc., 543 B.R. at 202. Thus, Park Restoration clearly had some right to the remitted insurance proceeds.

The operative question is then whether Park Restoration's rights matured into a vested property interest. This Court finds that it did not.  Instead, it appears that any rights that Park Restoration had in the insurance proceeds were subject to the rights of the Taxing Authorities and, as a result Park Restoration's rights were not vested and were inchoate, contingent and unmatured as long as the Secured Tax Claims remained unpaid.

This finding was articulated in this Court's Declaratory Judgment Opinion wherein this Court observed that Park Restoration's rights to the entirety of the insurance proceeds "were always subject to the claim of the Taxing Authorities." In re Trustees of Conneaut Lake Park, Inc., 543 B.R. at 206; see also Trustees of Conneaut Lake Park, Inc., 855 F.3d at 526.

Further, that since the State Statute was incorporated into the terms of the insurance contract with Erie Insurance, Park Restoration "***never acquired a vested right*** to the $478,260.75 owed to the taxing authorities at the time of the fire." In re Trustees of Conneaut Lake Park, Inc., 543 B.R. at 206 (emphasis added).

Accordingly, it logically follows that since Park Restoration had no vested property interest in those funds remitted by Erie Insurance, it cannot be said that Park Restoration satisfied the Secured Tax Claims with its (that is Park

16

Restoration's) own property.   Park Restoration's subrogation claim must fail under these circumstances.

Nonetheless, Park Restoration argues that to find that it lacked a property interest in the insurance proceeds would contradict established Pennsylvania caselaw which provides that an insured's rights to insurance proceeds vest upon the occurrence of the loss triggering the insurer's liability. As Park Restoration states it, TCLP's interpretation of the Third Circuit's holding would mean that "§ 638 precludes an insured's interest from vesting until after ***any*** third party claims or defenses to the distribution of those proceeds are resolved. . . ." Park Restoration's Second Brief at p. 5 (emphasis and underline added). Park Restoration's argument is unpersuasive for a couple of reasons.

First, any perceived effect is vastly overstated by Park Restoration as the State Statute only provides for the withholding of payment to the insured upon condition of satisfying certain tax obligations, not any party's claims or defenses. Moreover, as discussed above, the relevant caselaw and the language of the insurance policy incorporate the conditions of the State Statute into the insurance policy itself—which this Court has already found that Park Restoration voluntarily entered into—making it no different from any other bargained-for condition of payment. See Trustees of Conneaut Lake Park, Inc., 543 B.R. at 205.

Second, even assuming that Park Restoration's statement that a right to payment under an insurance policy vests upon the occurrence of a triggering

loss is the correct statement of the law, at least one court addressing the issue has denied subrogation claims by parties claiming a vested right in property due to a lack of a sufficient ownership interest (on account of the superior interest of another).

In Greenfield, Stein & Senior, LLP v. Daley (In re Daley), 222 B.R. 44 (Bankr. S.D.N.Y. 1998), the United States Bankruptcy Court for the Southern District of New York determined a similar issue to the one *sub judice*.

In Daley, an attorney represented the debtor in two separate actions—an employment litigation case and a divorce proceeding. Pursuant to the divorce litigation, the debtor entered into an agreement with his now former spouse under which he would pay her a certain sum from the proceeds from any recovery in the employment litigation and that sum would be "paid prior to any other third party."

However, when the debtor obtained a judgment, the debtor's counsel asserted that its charging lien primed the spouse's lien. It was ultimately decided that the former spouse's claim was superior.

Thereafter, the debtor filed for bankruptcy relief and counsel filed an adversary proceeding seeking to assert the former spouse's claim and have it declared non-dischargeable. In those proceedings, counsel argued that it could assert a non-dischargeability action on a subrogation basis because the former spouse's interest primed counsel's charging lien and the former spouse would be paid out of counsel's alleged property. The bankruptcy court noted that under 11 U.S.C. § 509, a crucial element of subrogation is that the subrogee

must have utilized its own property to pay the debtor's debt. See In re Daley, 222 B.R. at 47. Thus, the counsel's subrogation claim in Daley—like Park Restoration's in the instant case—depended on whether counsel "owned" the proceeds of the employment litigation action paid to the former spouse. This determination hinged on the rights conferred to counsel in the proceeds by virtue of its charging lien. Id. at 47. The bankruptcy court noted that under New York law, a charging lien is a vested property right created by law. Id. at 47-48. Accordingly, counsel had a vested property right or an equitable ownership interest in the employment litigation claims asserted by the debtor. However, this vested property interest did not equate to an ownership interest in the proceeds of that litigation. Notably, it had been previously determined that despite the charging lien, the former spouse had a superior interest in the litigation proceedings. This determination turned, in part, on the fact that the counsel asserting the charging lien was also counsel to the debtor in the marriage dissolution action and thus, "either signed, negotiated or were fully aware of the settlement" which granted the former spouse priority to certain amounts from the employment litigation proceeds.  Consequently, although counsel's vested property interest in debtor's cause of action in the employment litigation was an "inchoate right" to litigation proceeds—which under normal circumstances would create a property interest upon recovery—by acquiescing to the settlement agreement, counsel effectively waived its right to make its interest in the proceeds "choate." Id. at 48-49. Accordingly, the litigation

proceeds to be paid to the former spouse in <u>Daley</u> were not the property of the counsel, and the counsel's subrogation theory failed.

Like counsel in <u>In re Daley</u>, Park Restoration entered into the insurance contract with Erie Insurance with knowledge, either actual or constructive, that its rights were conditioned on the satisfaction of certain tax obligations. As such, any interest in the insurance proceeds that Park Restoration had was an inchoate right, which Park Restoration waived the right to make choate until the tax obligations were satisfied in accordance with the applicable law. <u>See</u> <u>In re Daley</u>, at 49.

As stated above, both this Court and the Third Circuit previously found as much, noting that Park Restoration's rights to the insurance proceeds were always subject to the claims of the Taxing Authorities.  Thus, even if Park Restoration possessed a "vested" right to the remitted portion of the insurance proceeds such right would nonetheless be inferior to that of the Taxing Authorities and Park Restoration's claim for subrogation fails.

Finally, Park Restoration argues that the Third Circuit's statement that "we emphasize that nothing in this opinion should be construed to preclude Park Restoration from seeking an accounting or other equitable relief in the future[,]" evidences that Park Restoration had a vested interest in the insurance proceeds. Park Restoration rationalizes that if it had no cognizable legal interest in the insurance proceeds, that Park Restoration would not have a right to seek such relief. <u>See</u> Park Restoration's Second Brief at p. 5.

Park Restoration has relied on this language in support of a claim for equitable relief before and in its *Memorandum Opinion* granting TCLP's *Motion for Order (A) Enforcing the Discharge Injunction; and (B) Imposing Sanctions for Civil Contempt of the Court's Plan Confirmation Order*, this Court observed that the plain language of the Third Circuit's statement "does not mandate the outcome of any claim for equitable relief sought by Park Restoration." See In re Trustees of Conneaut Lake Park, Inc., 2018 WL 2246582, at *4. Thus, the Third Circuit's statement is not a guarantee or an advisement that Park Restoration is entitled to equitable relief—it was only a statement that its opinion is not a foreclosure of Park Restoration's ability to pursue such relief.

Accordingly, the Court finds that Park Restoration did not have a vested interest in the insurance proceeds remitted by Erie Insurance and as such, did not satisfy the Secured Tax Claims with Park Restoration's own property. Therefore, Park Restoration is not a "payor" as required by 11 U.S.C. § 509, and its claim for subrogation must fail.

### Park Restoration Is Not "Liable With" TCLP on the Secured Tax Claims

Turning back to the first prong, § 509(a) requires that a subrogee be "liable with the debtor on" or has "secured" a claim of a creditor against the debtor. See 11 U.S.C. § 509(a).

Park Restoration asserts that it is a "co-debtor" of TCLP as it was "secondarily liable" on the Secured Tax Claims. See *Plaintiff's Response to Debtor's Motion to Dismiss* 2, ECF No. 16 ("Response").

Park Restoration disputes that it was "primarily liable" for the taxes. <u>See</u> Response at p. 3.   Park Restoration, however, does assert that it was secondarily liable pursuant to the State Statute.   As Park Restoration puts it "[t]hat [Park Restoration] was secondarily liable for [TCLP's] delinquent taxes is the only logical explanation for how insurance proceeds that it paid for, could be used to pay the delinquent property taxes owed by another." <u>See</u> Response at p. 3.

Essential to an evaluation of Park Restoration's claim that it is a "co-debtor" with TCLP is an understanding of Park Restoration's liability on the tax obligation.

The phrase "liable with" means:

[To be] "[b]ound or obliged in law or equity." The word "with" means "in addition to." Consequently, looking to the plain language of the statute and giving effect to its meaning, "an entity ... is liable with the debtor," when the entity is bound or obliged in law or equity in addition to the debtor on "a claim of a creditor against the debtor."

<u>In re Daley</u>, 222 B.R. at 47 (quoting <u>CCF, Inc. v. First Nat'l Bank & Trust Co. of Okmulgee (In re Slamans)</u>, 69 F.3d 468, 473 (10th Cir.1995) (all citations omitted)).

Stated in other words, to be "liable with" the debtor is to be liable "to the same creditor at the same time on the same debt." <u>In re Daley</u>, 222 B.R. at 47 (quoting <u>In re Topgallant</u>, 154 B.R. at 381, fn. 12).

Courts examining whether subrogation is warranted have noted that a signal of whether a potential subrogee is "liable with" a debtor on a particular debt is the independence of the subrogee's obligation—i.e. whether the

potential subrogee's obligation is its own, separate and distinct from the debtor's.    After all, the "legislative history to § 509 indicates that it was designed to describe rights available to a limited class of creditors, namely, **_true co-debtors_** who have actually paid a debtor's obligation to the third party in question." In re Hamada, at 650 (emphasis added).

For example, the Third Circuit in Tudor Dev. Grp., Inc. v. United States Fidelity & Guar. Co., 968 F.2d 357 (3d Cir. 1992), found that, in contrast to a guarantor of a debt, a bank which issued standby letters of credit in connection with a construction project cannot "accede to the rights of its customer" when it pays out on the standby letters of credit.    The court reasoned that the liability the bank satisfied in making the payment was its own—for which it was primarily liable—as the bank was contractually obligated to make the payment.    As noted by the Third Circuit:

> [T]he key distinction between letters of credit and guarantees is that the issuer's obligation under a letter of credit is primary whereas a guarantor's obligation is secondary—the guarantor is _only_ obligated to pay if the principal defaults on the debt the principal owes. In contrast, while the issuing bank in the letter of credit situation may be secondarily liable in a temporal sense, since its obligation to pay does not arise until after its customer fails to satisfy some obligation, it is satisfying its own absolute and primary obligation to make payment rather than satisfying an obligation of its customer. Having paid its own debt, as it has contractually undertaken to do, the issuer "cannot then step into the shoes of the creditor to seek subrogation, reimbursement or contribution from the [customer]. The only exception would be where the parties reach an agreement to the contrary." In re Kaiser Steel, 89 B.R. at 153.

<u>Tudor Dev. Grp., Inc.</u>, at 362; <u>see also</u> <u>In re Hamada</u>, 291 F.3d at 650 (citing to <u>Tudor</u>, finding that an issuer of letters of credit, in contrast to a surety or guarantor, is not "liable with" a debtor as contemplated by 509(a)).

Thus, to determine whether Park Restoration was "liable with" the debtor on the Secured Tax Claims, we must understand the origin of Park Restoration's personal liability, if any.  In this regard, Park Restoration avers that it was liable by virtue of the State Statute—specifically, the mandate that its property (the insurance proceeds) be used to satisfy delinquent taxes of TCLP prior to disbursement.

An issue with Park Restoration's claim that it was "secondarily liable" or a "co-debtor" of TCLP on the Secured Tax Claims by virtue of the State Statute is actually articulated by Park Restoration in its arguments against subrogation by Erie Insurance.[8]  In Park Restoration's Second Brief, it argues that under the State Statute, Erie Insurance was only required to make payment out of the insurance proceeds (which had allegedly vested in Park Restoration) and that Erie Insurance had no obligation to utilize its own separate funds to pay the outstanding taxes even in the event of a shortfall. <u>See</u> Park Restoration's Second Brief at p. 7.  Thus, Park Restoration maintains that Erie Insurance is neither a co-debtor or payor under § 509(a). <u>See</u> Park Restoration's Second Brief at p. 7. However, this is exactly the scenario which Park Restoration itself has faced.

---

[8] At the July 17, 2018 hearing, the parties were asked to address whether the insurer, Erie Insurance, could have a plausible claim for subrogation.

As averred by Park Restoration, Park Restoration is not the party liable for payment of the property taxes—as it is not the property owner.[9]  In fact, the record reflects that Erie Insurance (and not Park Restoration) became the party responsible for payment pursuant to the State Statute because the State Statute only requires payment from the insurance proceeds. Moreover, Park Restoration does not aver that (if the insurance proceeds were insufficient to satisfy the tax delinquency) Park Restoration would be personally liable for the deficiency.  And, the Court does not find as much.  As noted by both this Court and the Third Circuit, the State Statute creates an *in rem* interest versus an *in personam* liability which attaches to all fire insurance proceeds for the property.[10]

As it has been determined that Park Restoration did not have a vested property interest in the insurance proceeds remitted by Erie Insurance, Park Restoration's own personal property has not been used to satisfy the tax obligation nor does it appear that it would be so required in the event that the

---

[9] Park Restoration avers that Pennsylvania caselaw provides that the "real owner" of real property is the party responsible for payment of the corresponding real estate taxes.  See Amended Complaint at ¶32.  Moreover, that it was TCLP's "legal duty" to pay the real estate taxes since it owned the property. See Amended Complaint at ¶39.

[10] As this Court and the Third Circuit observed:

> [T]he statute does not "qualify its terms by requiring that the named insured be the 'owner' of the structure destroyed by the fire. Nor does the statute limit the imposition of the tax claim against insurance proceeds payable to the entity primarily liable for the tax debt in question." Conneaut Lake Park, Inc., 543 B.R. at 203. The tax claim is "levied against the insured property"—that is, it is "*in rem* in nature and runs with the real property." Id. (internal formatting and quotation marks omitted). So the Taxing Authorities' claim "attache[d] to any fire insurance proceeds payable to any named insured as opposed to being limited solely to the beneficial interests (if any) of the primarily liable taxpayer." Id.

See Trustees of Conneaut Lake Park, Inc., 855 F.3d at 523.

insurance proceeds failed to satisfy the Secured Tax Claims.    Thus, Park Restoration appears to have no true co-liability for the taxes in its own sense. These circumstances are also fatal to Park Restoration's subrogation demands.

As Park Restoration was neither a payor of, nor co-liable on, the Secured Tax Claims as contemplated by 11 U.S.C. § 509, Park Restoration has failed to state a claim upon which relief may be granted and dismissal of the Amended Complaint is warranted.

As the Court finds that dismissal of the Amended Complaint is appropriate on the basis of Fed. R. Civ. P. 12(b)(6), no further analysis of TCLP's remaining bases for dismissal is necessary at this time.

## III.

Based on the foregoing, the Court finds that Park Restoration has failed to state a claim upon which relief may be granted and dismissal is warranted under Fed. R. Civ. P. 12(b)(6), made applicable herein by Fed. R. Bankr. P. 7012(b). Accordingly, the Court grants TCLP's Motion to Dismiss. An appropriate order will be entered contemporaneous with this *Memorandum Opinion.*

Date:  September 28, 2018

jlh

_____
The Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:    Jeanne Lofgren, Esq.
        John Mizner, Esq.

FILED
9/28/18 3:15 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA